ELVIRA JUANA MANUELA JOAQUINA GARCÍA FERNÁNDEZ, Plaintiff and Appellee, *v.* JOSEFA AGUAYO CASALS ET AL., Defendants and Appellants.

No. 5863. Argued February 8, 1933.—Decided December 1, 1933.

*Tous Soto & Zapater* for appellants.　*Guerra Mondragón & Soldevila* for appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the Court.

Something more than a decade has elapsed since this court in *García et al.* v. *Aguayo et al.,* 32 P.R.R. 392, said:

"For about twenty years the plaintiff in this case has been contending for an acknowledgment of her rights as the legitimate daughter of Juan García Villarraza and his wife, Manuela Fernández y Rodríguez. *Aguayo et al.* v. *García,* 11 P.R.R. 263; *García* v. *Aguayo et al.,* 29 P.R.R. 954."

In January 1926, the district court adjudged Elvira Juana Manuela Joaquina García Fernández to be the legitimate daughter of Juan García Villarraza and Manuela Fernández, and as such entitled to inherit from her father. It also set aside a previous declaration of heirship in favor of defendants herein, ordered the cancellation of certain entries in the registry of property, and directed that the property left by the deceased Villarraza be redistributed. The judgment further provided that the accrued rents and profits should be brought into the common mass and included in the redistribution after a hearing and the determination of the amount thereof. On affirming this judgment in *García* v. *Aguayo,* 39 P.R.R. 82, 99, we quoted the district judge as follows:

" 'As to the fruits claimed we lack a firm basis for determining the amount and value thereof, not only because they depend on the hereditary share to be allotted to the plaintiff in the distribution, but because the evidence heard in this case does not furnish us with a sure foundation for calculating the total amount of the fruits or rents. It is alleged by the plaintiff that the house referred to in the complaint has produced sometimes from 75 to 100 dollars and now is rented for 200 and some dollars. The defendants have submitted to us an account of the receipts and expenditures of the management of the property, which account has not met with the approval of the plaintiff in its results, and although counsel for the defendants has offered to bring the receipts and vouchers of the account and witnesses in support thereof, that evidence has not been submitted, and we think that the proper thing to do in furtherance of justice is to make a full liquidation of the fruits so as to determine the amount thereof, allotting to the plaintiff her proper share proportionate to her hereditary share. That liquidation must be made within fifteen days after this judgment becomes final, for which purpose the defendants shall furnish the proper vouchers and relevant proof for the purpose of determining with the greatest accuracy the total amount of said fruits.' "

After referees appointed by the court had deducted from gross receipts certain items expended for taxes, repairs, and conservation and had reported the total net result as the basis for a division of rents and profits, defendants moved to correct the statement previously filed by them by deducting therefrom one-half of the rents and profits received from September 12, 1908, to May 10, 1911. Defendants set forth for the first time in this motion that one-half of the rents and profits received during this period had been paid to one Roque Suárez as the record owner of an undivided one-half interest in the property. This motion was accompanied by a proposed new statement of the rents and profits received and disbursements made during the period in question. The district court on approving the report of the referees held that the question as to these deductions and certain other questions could not properly be determined in a proceeding incident to execution of the judgment already rendered.

Defendants appeal from this ruling and say that the district judge erred in not deducting the rents and profits received by Roque Suárez.

Plaintiff alleged in her complaint that defendants had received the rents and profits and had excluded plaintiff from participation therein, all in bad faith from the date of Villarraza's death. The prayer was for a new partition after bringing into collation the rents and profits produced by the property. Defendants answered that Doña Josefa had received the rents and profits in her own right and as the representative of her daughter, Graciela, in good faith and in reliance on the declaration of heirship and on the judgment of the district court. The judgment of the district court followed by the decision of this court (39 P.R.R. 82) and by that of the Circuit Court of Appeals, 40 F. (2d) 831, was adverse to defendants on the question of good faith and closed the door to subsequent speculation as to whether the whole or a part only of the rents and profits should be brought into collation. Any determination that less than all of such rents and profits (after making deduction for useful and necessary expenses such as payment of taxes, the making of repairs, and other matters connected with conservation of the property) would have amounted to a modification of the judgment already rendered. The only questions left open for further investigation were those connected with the carrying out of the judgment and properly preliminary to an actual partition of all the rents and profits or the net total thereof. The money paid to Roque Suárez was not an item to be deducted from the total of rents and profits received as a means of determining the net amount subject to distribution. The theory of appellants is that Roque Suárez was an innocent purchaser who was entitled to a share of the rents and profits during the time of his ownership, and that the rents and profits corresponding to his interest in the property were not subject to collation. This was a question that should have been raised by the pleadings and the

evidence before rendition of the judgment, which provided that all of the rents and profits or the net amount thereof to be subsequently determined should be brought into collation. See *Jiménez* v. *Cartagena,* 18 P.R.R. 525. Even otherwise, assuming without holding, that Roque Suárez, as between himself and defendants, was entitled to a share in the rents and profits during the time of his alleged ownership, we are not inclined to agree with appellants that any payment made to him by Doña Josefa out of the rents and profits which she had collected would relieve her from all responsibility to plaintiff for the rents and profits so received and disbursed. See *Román* v. *Rivera,* 43 P.R.R. 512.

The next question raised by appellants presents a different situation. Doña Josefa Aguayo in her original statement of receipts and expenditures specified as expenditures chargeable to plaintiff a number of monthly items for maintenance of plaintiff from May, 1899, to June 30, 1902, and for monthly payments made to plaintiff from July, 1902, to June, 1904, amounting to a total of $1,165.04. Plaintiff admitted having received this amount out of the rents and profits. In a revised statement introduced in evidence before the referees this total was listed as indebtedness of plaintiff and an item of $65.00 was added as rental of a house said to have been occupied by plaintiff during April, 1925. The question as to whether this claim should be allowed was excluded by the district judge from the consideration of the referees and reserved for determination by the court. On approving the referees' report the district judge said that Doña Josefa's claim against plaintiff should be asserted either at the time of actual partition or in an independent action. This, we think, was error. It may be conceded that the question might be raised and decided at the time of actual partition. That is not a sufficient reason why it should not have been decided at the time of approving the referee's report. The view taken by the district judge overlooks the close connection between the questions already determined by the referees

and the contemplated partition itself. The court on approving the report was not only laying a basis for partition but was already anticipating questions usually and normally decided at the time of actual partition. Section 1016 of the Civil Code (1930 ed.), provides that: "On making the division, the coheirs shall reciprocally compensate each other for the income and fruits each of them may have received from the hereditary property" as well as "for the useful and necessary expenses made on said property." The court had already determined, in advance of an actual division, what compensation should be made for "useful and necessary expenses" incurred by Doña Josefa and paid by her out of the rents and profits. If justified in doing this there is no reason why it should not have determined, likewise in advance of an actual division, the exact amounts of rents and profits already received by plaintiff and therefore chargeable to her account as advances whenever the actual partition should be effected. Neither section 1016, nor any other principle or provision of law forbids previous judicial determination of either question. There is no more reason in the one case than in the other why a court should postpone either its finding of fact or its conclusion of law pending actual partition. Nor has any satisfactory reason been suggested as to why defendant Aguayo should be relegated to an independent action. Her claim was not barred by limitation because the proper time for making the demand was or ordinarily would have been at the time of partition. It was not premature, in the circumstances of the instant case, for reasons already stated. A determination of the amount of rents and profits received by plaintiff would not have involved any modification of the judgment previously rendered. It would have been in full consonance with plaintiff's prayer and with the provision contained in the judgment that all of the rents and profits should be brought into collation. It may be that a timely amendment of the answer would have been the better practice but in view of the facts above outlined the

pleading should be deemed to have been amended. This controversy should be terminated if possible before the small estate, a house in Ponce worth but a few thousand dollars and the rental received therefrom, has been consumed by the cost of litigation.

The fourth assignment is that the district court erred in refusing to pass upon the claim of defendant Aguayo for compensation as administrator of the property in question and in not fixing such compensation at ten per cent of the rental collected by her.

In support of this contention appellants cite sections 992, 405, 1310 and 1486 of the Civil Code (Comp. Stat. 1911), and 31 and 53 of the Law of Special Legal Proceedings. "Until all the known creditors and the legatees have been paid," according to section 992, the estate is deemed to be under administration. Section 992 refers to inheritances subject to inventory. See 7 Manresa (second edition), 473. Section 405 refers to property held in common and says that "The resolution of the majority of the participants as to the management and better enjoyment of the thing held in common shall be binding (on all)." The rest of it need not be quoted. Section 1310 defines the interests of the respective spouses in the conjugal earnings and profits on dissolution of the marriage. Section 1486 authorizes an action for the recovery of the reasonable value of professional services. Section 31 of the Law of Special Legal Proceedings authorizes the appointment of the surviving spouse or of certain other persons in the manner prescribed therein as a judicial administrator. Section 53 fixes the compensation of executors and administrators in the absence of any testamentary provision.

The argument for appellants assumes without attempting to show: first, that Doña Josefa Aguayo was managing the property in question as the estate of her deceased husband; second, that there were creditors or legatees or both; and third, that such creditors or legatees had not been paid. On

the other hand the averment contained in the answer that Doña Josefa had received the rents in her own right and as representative of her daughter, clearly implied that she was dealing with the property not as the estate of the decedent, but as property belonging exclusively to herself and her daughter. For the same or similar reasons the alternative suggestion that she was handling the property under any authority conferred upon her by "The resolution of the majority of the participants as to the arrangement and better enjoyment of the thing held in common" is equally groundless.

By the terms of section 384 a possessor in bad faith "shall only have the right to be reimbursed for the necessary expenses incurred in the preservation of the thing." Section 290, however, requires that "the receiver of fruits" shall "pay the expenses incurred by a third person in their production, gathering and preservation." These two sections were construed together in *Román* v. *Rivera, supra.* Section 1016, as we have seen, allows compensation for useful and necessary expenses incurred in the conservation of property which is to be distributed among coheirs. In none of these sections is any mention made of any commission to be paid to a possessor in bad faith as administrator of the property which he refuses to restore to its rightful owner or to share with a co-owner. Yet these are the sections most applicable to the facts in the instant case and in one or the other of them rather than elsewhere in the Civil Code we should expect to find any justification that can be found for Doña Josefa's claim to compensation as an administrator.

The ruling appealed from must be reversed as far as it involves the refusal of the district judge to pass upon the question of plaintiff's liability for rents and profits received by her and to determine the amount of such rents and profits, and in lieu thereof the proper order of this court will be entered. In all other respects the ruling will be affirmed.